Filed 12/7/16 Opinion on rehearing

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063172 |
| v. | (Super.Ct.No. BAF1400096) |
| WILLIAM DONALD JOHNSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael B. Donner, Judge.  Affirmed in part; reversed in part.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Scott C. Taylor and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant William Donald Johnson of gross vehicular manslaughter while intoxicated (Pen. Code,[1] § 191.5, subd. (a); count 2) and hit and run with injury (Veh. Code, § 20001, subd. (a); count 3). The jury also found true two enhancement allegations; defendant fled the scene (Veh. Code, § 20001, subd. (c); count 2) and the collision resulted in a fatality (Veh. Code, § 20001, subd. (b)(2); count 3). The jury did not reach a unanimous verdict on the other charged count, second degree murder (Pen. Code, § 187, subd. (a); count 1), and the trial court granted a mistrial with respect to that count. On retrial with respect to count 1, a new jury found defendant guilty of second degree murder.

In this appeal, defendant contends that the trial court erred during his retrial by not informing the jury that he had been convicted in the first trial of gross vehicular manslaughter while intoxicated, and that the error requires reversal of his second degree murder conviction. We agree that the trial court's instructions to the jury for defendant's retrial were erroneous in several respects, and the second degree murder conviction must be reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2013, a vehicle driven by defendant veered into and across oncoming traffic lanes, striking a bicycle travelling in the opposite direction in the bicycle lane. Defendant did not slow or stop after the collision. The bicyclist died on January 11, 2014, of injuries sustained in the collision.

---

[1] Further undesignated statutory references are to the Penal Code.

Defendant had recently been hospitalized for treatment for addiction to pain medication, and at the time of the collision on December 29, 2013, was driving home from follow-up outpatient therapy. He had taken several antianxiety medications, Xanax and Neurontin, as well as Cymbalta for depression. He also drank a half-pint bottle of vodka during the drive.

After the collision, another motorist saw defendant run a stop sign, nearly causing another collision, and shortly thereafter, at a stoplight, observed him to be "hunched down" in the driver's seat. Defendant's son observed that defendant appeared "out of it" and "shaken" when he arrived home on the day of the accident, and that his vehicle had suffered new damage. After the accident, a neighbor saw defendant and his family examining the front end of the car, and then covering the vehicle with a tarp or car cover. Defendant's daughter testified that defendant asked her to look for a windshield repair company located "outside the local area" to fix his broken windshield. On January 6, 2014, while the vehicle's windshield was being repaired, a passing law enforcement officer recognized it as matching the description of the vehicle that had struck a bicyclist; he ordered the workers to stop, and reported the vehicle to his supervisor. Responding investigators were able to match a piece of a broken headlight recovered from the scene of the collision to defendant's vehicle.

In addition to evidence of defendant's actions after the collision, the prosecution also introduced evidence of defendant's past experience with the dangers of driving while intoxicated. In 2006, defendant was injured in a single-car crash, in which he was the driver and only occupant of the car. Defendant was too severely injured to perform field

sobriety tests, but a responding law enforcement officer found him to smell strongly of alcohol, and a blood test revealed his blood alcohol content to be 0.24 percent, three times the legal limit of 0.08 percent. After the 2013 collision, when asked by police why he had driven under the influence again despite the previous serious accident, defendant responded, "Yeah just horrible decisions. You know."

The prosecution also introduced evidence that from fall 2012 to fall 2013, defendant regularly attended meetings of Alcoholics Anonymous, in which the topic of driving under the influence was regularly discussed. Additionally, the parties stipulated that several medications taken by defendant came with warnings about alcohol consumption while taking the medication, operating a motor vehicle while taking the medication, or both.

Defendant presented no affirmative defense.

Defendant's first trial was conducted in August 2014. Defense counsel argued to the jury that defendant should be acquitted of second degree murder (count 1), but did not argue for acquittal with respect to the hit and run charge (count 3). With respect to gross vehicular manslaughter (count 2), counsel conceded that defendant had been negligent, but asked the jury to find him guilty of the lesser included offense of vehicular manslaughter while intoxicated with ordinary negligence (§ 191.5, subd. (b)). The jury could not reach a verdict with respect to second degree murder, resulting in a mistrial on count 1; the jury convicted defendant of the remaining counts and their enhancements.

Plaintiff was retried on the second degree murder charge in February 2015. During voir dire for the retrial, the trial court had informed the jury panel that there had

4

been a prior trial arising out of the same underlying facts, that defendant had been convicted of "two of the three charges brought by the district attorney," and that the jury's task would be to "address the one count that was left unresolved in the first trial."[2] After the close of evidence, in response to inquiry by defense counsel, the trial court clarified that neither side would be permitted to mention the prior convictions during closing arguments. The jury was instructed on excusable homicide and on murder, but no intermediate level of culpability. Defense counsel's closing arguments adhered to the trial court's order; counsel conceded that the collision was not "just an accident," but argued that it also did not amount to murder, without mentioning defendant's conviction for gross negligence. The jury returned a guilty verdict.

After defendant's second trial, the trial court imposed an aggregate sentence of 18 years to life, consisting of a determinate three-year term for count 3 and a term of 15 years to life for count 1, with the sentence for count 2 and its enhancement stayed pursuant to section 654.

## II. DISCUSSION

Citing to this court's opinion in *People v. Batchelor* (2014) 229 Cal.App.4th 1102 (*Batchelor*), defendant contends that the trial court erred by denying his request that the jury for his retrial be informed that he had been convicted in a prior trial arising out of the

---

[2] The record on appeal does not include a transcript of the voir dire itself. We quote here from the trial court's statement of how it intended to inform the jury panel at defendant's second trial. The parties agree that the record strongly suggests the trial court instructed the jury panel as it indicated it would, and we presume that it did for purposes of this appeal.

same underlying facts of gross vehicular manslaughter while intoxicated, instead informing the jury only that he had been convicted "of two of the three charges brought by the district attorney." We agree that the trial court's instructions to the jury were erroneous in several respects, including this one, and that these errors require reversal of the second degree murder conviction.

## A. Standard of Review

"Whether or not to give any particular instruction in any particular case entails the resolution of a mixed question of law and fact that . . . is however predominantly legal." (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) Claims of instructional error are therefore reviewed de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581, 584.)

## B. Analysis

### 1. *Application of Batchelor*.

In *Batchelor*, as here, the defendant was convicted of second degree murder on retrial, after a first jury had convicted him of gross vehicular manslaughter, but could not reach a verdict on the murder charge. (*Batchelor, supra*, 229 Cal.App.4th at pp. 1107-1108.) The *Batchelor* trial court rejected a defense request that the second jury be informed of the gross vehicular manslaughter conviction resulting from the first trial. We found the trial court erred, reasoning that "[t]he circumstance that the first jury was unable to reach a verdict on the murder charge should not properly be an opportunity to retry the case in a new posture, giving the jury the false impression that, absent a conviction for murder, defendant's actions would be left unpunished." (*Id.* at pp. 1116-1117.)

6

We predicted in *Batchelor* that "[t]here are likely many ways the trial court could have appropriately dispelled that false impression." (*Batchelor*, *supra*, 229 Cal.App.4th at p. 1117.) Here, the trial court attempted to do so, by informing the jury that in a previous trial defendant had been convicted of "two of the three charges brought by the district attorney," and that the jury's task would be to "address the one count that was left unresolved in the first trial." Our task in this appeal is to determine whether the trial court succeeded in complying with the principles we articulated in *Batchelor*.

We find that the trial court did not succeed. It is unreasonable to expect a jury so instructed to refrain from speculation as to what the two unknown charges from the previous trial might have been.[3] And on the facts of the present case, the two other charges could easily have been relatively minor offenses, not directly related to the death of the victim; for example, the defense did not contest that defendant had failed to stop at the scene of an injury accident; his attempt to cover up his involvement in a collision could conceivably have given rise to an obstruction of justice charge. Although the trial court's instruction excluded the possibility that defendant would suffer no criminal convictions, it left open the distinct possibility that he would, absent a conviction for murder, avoid any conviction holding him directly accountable for the death of the victim. This is only a slight variant of the same evil that our holding in *Batchelor* was intended to address.

---

[3] We note that the jury was not apparently given any specific instruction *not* to engage in such speculation, but in any case we doubt such an instruction could be effective.

7

In *Batchelor*, the problem was exacerbated by the prosecutor's effort to take advantage of the new posture of the case on retrial, suggesting that the jury must return a verdict of guilty on the murder charge, or else the defendant would not be held accountable at all for the death of the victim. (*Batchelor, supra*, 229 Cal.App.4th at p. 1117.) Here, the prosecutor refrained from any such argument.

Nevertheless, the transcript of closing arguments is again an excellent illustration of how the trial court failed to mitigate the unfairness of the new posture of the case on retrial. In defendant's first trial, defense counsel conceded explicitly that defendant had been negligent, and that this negligence had resulted in the death of the victim, asking the jury to convict defendant of vehicular manslaughter, but not murder. On retrial, defendant was effectively foreclosed from making this argument. The jury was instructed on excusable homicide and murder, but no intermediate level of culpability. Defense counsel could concede that the collision was more than "just an accident," and could dispute that it rose to the level of second degree murder. But defense counsel could not ask the jury to hold defendant responsible for negligence (whether ordinary or gross), or point to the circumstance that defendant had already been held responsible for gross negligence by the first jury. The defense was thereby placed in a substantially weaker rhetorical position in the retrial. At the same time, the jury, given only vague information about defendant's prior convictions arising from the same facts, was given essentially the same all-or-nothing choice between excusable homicide and murder that we found problematic in *Batchelor*.

8

The People argue that our opinion in *Batchelor* was "poorly reasoned, wrongly decided, and should not be followed." Whether this position has merit is a matter that will ultimately be decided by the California Supreme Court; a petition for review has been granted on a (now formerly) published opinion issued by the Second District Court of Appeal that disagreed with *Batchelor*.[4] (*People v. Hicks* (2015) 243 Cal.App.4th 343, review granted March 23, 2016, No. S232218.) The Supreme Court's grant of review limits the issue to be briefed and argued to "whether the trial court erred when it refused to inform the jury at the retrial of a murder charge that defendant had been convicted of gross vehicular manslaughter in the first trial," and cites explicitly to *Batchelor*. (*People v. Hicks* (Mar. 23, 2016, S232218) 2016 Cal. LEXIS 1757 [200 Cal.Rptr.3d 7 (mem.)].)

Pending the Supreme Court's final word on the issue, however, we are not persuaded that *Batchelor* was incorrect. The People point to authority for the proposition that the Supreme Court has "never suggested that the trial court is required to inform the jury of the history of the prior proceedings . . . ." (See, e.g., *People v. Edwards* (1991) 54 Cal.3d 787, 845 (*Edwards*).) Viewing this language in context, however, to the extent it is relevant at all, *Edwards* only supports our holding in *Batchelor*. *Edwards* involved a first jury that had convicted the defendant of murder with the special circumstance of lying in wait, but had been unable to reach a verdict regarding penalty; a second jury was empaneled to make the determination of whether to impose a death verdict. (*Edwards*,

---

    [4] The People's briefing cites extensively to the Second District Court of Appeal's opinion; properly so, because it had not yet been depublished by grant of review at the time of briefing in this matter. We here address the substance of the People's arguments, while adhering to California Rules of Court, rule 8.1115.

9

*supra*, at pp. 803-804.)  The Supreme Court held that the trial court was not required to inform the second jury of the *details* of the case history; specifically, whether the first jury failed to reach a verdict regarding penalty, or whether the first jury's penalty verdict was overturned on appeal.  (*Id.* at p. 845.)  The Supreme Court expressed no disagreement with the circumstance that the jury was told the defendant had previously been convicted of murder with the special circumstance of lying in wait.  (*Ibid.*)  Neither *Edwards*, nor any other case cited by the People, stands for the proposition that on retrial a second jury should not be informed of the existence of the conviction returned by the first jury, or the nature of that conviction.

The People also suggest that *Batchelor* contradicts section 1180, which states as follows:  "The granting of a new trial places the parties in the same position as if no trial had been had.  All the testimony must be produced anew, and the former verdict or finding cannot be used or referred to, either in evidence or in argument, or be pleaded in bar of any conviction which might have been had under the accusatory pleading." (§ 1180.)  Section 1180 has no application to *Batchelor*, or the present case, because in neither case was there a grant of a new trial; the second trial was not a reexamination of an issue previously decided, but a completion of unfinished business.  (See § 1179 [defining "new trial" as "a re-examination of the issue in the same court, before another jury, after a verdict has been given"].)  It should be noted, however, that the concept articulated in section 1180, that in a second trial arising from the same set of facts the parties should be put, as close as possible, in the same position as if no trial had been

10

held, is entirely consonant with, and indeed is the fundamental principle underlying, our decision in *Batchelor*. (*Batchelor, supra*, 229 Cal.App.4th at pp. 1116-1117.)

We are also unpersuaded that the *Batchelor* opinion is in conflict with the rule that punishment is not an appropriate consideration for the jury during the guilt phase of a trial. In the related context of the court's sua sponte duty to instruct on lesser included offenses, California precedent has recognized that forcing a jury to make an "'unwarranted all-or-nothing choice'" between conviction of the crime charged and acquittal interferes with the jury's "'truth-ascertainment function.'" (*People v. Breverman* (1998) 19 Cal.4th 142, 155.) Among other things, such an all-or-nothing choice may encourage the jury to return a verdict based on its own sense of rough justice, for example, by returning a conviction of the charged offense, despite entertaining reasonable doubt of guilt on some element of the offense, because it is unwilling to acquit a defendant it is persuaded has been guilty of wrongful conduct of a lesser degree. (See *People v. St. Martin* (1970) 1 Cal.3d 524, 533.) It is inappropriate to allow either the state or the defendant to force the jury to make such an all-or-nothing decision, hoping that improper considerations may weigh in their favor: "Our courts are not gambling halls but forums for the discovery of truth." (*Ibid.*)

Of course, gross vehicular manslaughter is a lesser related offense of second degree murder, not a lesser included offense. (*People v. Sanchez* (2001) 24 Cal.4th 983, 991, overruled on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228-1229.) Nevertheless, the above principles articulated in the context of lesser included offenses are similarly applicable to facts such as those of *Batchelor*, and those of the case at bar.

11

The primary task of both of defendant's juries was to determine the appropriate mens rea to attribute to defendant's actions, on largely undisputed underlying facts. Defendant's first jury had a variety of options, ranging from ordinary negligence (since defendant's counsel did not attempt to argue for a finding of no culpability) to implied malice. Defendant's second jury had to decide between implied malice and no unlawful intent, and was never provided the contextual information necessary to understand that defendant's first jury had already resolved the issue of whether defendant acted with an intermediate level of culpability, such as ordinary or gross negligence. This was an all-or-nothing choice that, in our view, as expressed here and in *Bachelor*, should have been placed in context by means of an appropriate instruction.

Put another way: In circumstances such as this case or those of *Batchelor*, the lack of context inadvertently encourages the jury on retrial to consider punishment. Providing the jury some information about the results of the first trial encourages the jury to set aside the issue of punishment, as it is instructed to do elsewhere, and facilitates its ability to focus on the analysis it is properly being asked to perform, namely, to determine defendant's level of culpability.

The People also suggest several "policy considerations" in support of the argument that the second jury was properly kept unaware of defendant's conviction for gross vehicular manslaughter in the first trial. First, they express concern that informing the second jury of the results of the first trial could prejudice a defendant from changing his defense in a subsequent trial. This hypothetical concern is not raised by the present case, or by *Batchelor*. We do not decide here, and did not decide in *Batchelor*, whether

12

the jury should be informed of the results of the first trial over the defendant's objection. Here, as in *Batchelor*, the defendant requested that the jury be so instructed. Similarly, any concern that the defendant could be prejudiced by advising the jury that defendant was culpable or that it should determine certain facts adverse to defendant is misplaced when the defendant *wants*, as a tactical matter, to concede some culpability and does not dispute the adverse facts giving rise to that culpability.

We turn now to the issue of prejudice. Only if an examination of the record establishes a reasonable probability that the instructional error affected the outcome is reversal of defendant's conviction appropriate. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

In *People v. Soojian* (2010) 190 Cal.App.4th 491, 520, the court noted that some courts "have found it persuasive that the first trial ended in a hung jury when deciding whether the error that occurred in the retrial was prejudicial. [Citations.]" Here, the jury indicated to the trial court that it was deadlocked, with a four to eight split (without indicating which group was in favor of conviction), so at least four jurors, and perhaps eight, voted to find defendant not guilty of the murder charge.

Furthermore, although there is no dispute that the evidence was sufficient to support the murder conviction, it was not "overwhelming," as the People would have it. A finding of implied malice "depends upon a determination that the defendant *actually appreciated* the risk involved, i.e., a *subjective* standard." (*People v. Watson* (1981) 30 Cal.3d 290, 296-297, 300-301.) In this case, although the evidence that defendant actually appreciated the risk involved was substantial, it was also largely circumstantial

13

and in significant part rested on inference of defendant's pre-collision state of mind from post-collision behavior. The jury reasonably could have found defendant did not act with implied malice, even if he appreciated the gravity of his actions immediately after the collision, and even though he should have known better from his past experience.

In short, we find that there is a reasonable probability that the trial court's erroneous instruction with respect to defendant's first trial was the determining factor why the second trial resulted in a conviction for murder, while the first trial did not. We therefore conclude the error requires reversal.

    *2. Other Instructional Error.*

In addition to the *Batchelor* issues discussed above, we observe that the trial court's modification of the standard instruction on second degree murder given to the second jury only further muddied the waters.[5] Indeed, we would find this instructional error alone would require reversal of defendant's conviction.

The standard instruction that was the trial court's starting point, CALCRIM No. 520, includes a bracketed portion only to be given when "the prosecution's theory of the case is that the defendant committed murder based on his or her failure to perform a legal duty." (CALCRIM No. 520, Bench Notes) This bracketed portion is as follows:

"[(A/An) _____ *<insert description of person owing duty>* has a legal duty to

---

    [5] Defendant raised no objection to the form or content of the jury instruction as given in the trial court, and has not raised any such argument on appeal. Nevertheless, we may address on appeal an issue that would otherwise be forfeited for lack of objection, to forestall the need to address it, framed as ineffective assistance of counsel claim, on a petition for writ of habeas. (See *People v. Williams* (2000) 78 Cal.App.4th 1118, 1126.) The parties have each submitted supplemental briefing on the issue.

14

(help/care for/rescue/warn/maintain the property of/_____ *<insert other required*

*action[s]>)_____<insert description of decedent/person to whom duty is owed>*.[¶]

If you conclude that the defendant owed a duty to \_\_\_\_\_*<insert name of decedent>*, and

the defendant failed to perform that duty, (his/her) failure to act is the same as doing a

negligent or injurious act.]" (CALCRIM No. 520, boldface omitted.) This language is

followed by an instruction to be given when second degree murder is the only possible

degree of the crime for which the jury may return a verdict: "[If you find the defendant

guilty of murder, it is murder of the second degree.]" (*Ibid.*)

The trial court adopted these optional portions of CALCRIM No. 520 for

defendant's second jury as follows: "A driver has a legal duty to operate a motor vehicle

with care and caution to others at all times. [¶] If you conclude that the defendant owed

a duty to [the victim], and the defendant failed to perform that duty, his failure to act is

the same as doing a negligent or injurious act. [¶] If you find the defendant guilty of

murder, it is murder of the second-degree." Only the final sentence of this passage

appeared in the jury instructions given in defendant's first trial.

Given the absence of any other discussion of negligence in the jury's instructions,

this language regarding legal duty is confusing, to say the least.**6** At best, the jurors

---

**6** It is doubtful that the optional portion of CALCRIM No. 520 added in
defendant's second trial could be applicable at all to the facts of the case, regardless of
whether a charge based on negligence or gross negligence was at issue. The language is
appropriate in circumstances where a person has a special, affirmative legal duty to act,
not just a general duty of care. (See CALCRIM No. 520, Bench Notes [referencing
bench notes to CALCRIM No. 582's discussion of legal duty].) No such special duty is
apparently implicated by the facts of this case. In their supplemental briefing, the People

*[footnote continued on next page]*

might have recognized the language to be irrelevant to matters they were being asked to decide; there was no dispute that defendant caused injury, and whether he was negligent is not directly relevant to the question of whether he acted with implied malice, as required to convict him of second degree murder. At worst, the language suggests a finding that defendant failed to drive with adequate care and caution for others—a conceded issue—equates to culpability for second degree murder. Either way, the instruction was erroneous.

We need not engage in a lengthy discussion of prejudice from this erroneous instruction, in light of our conclusion above regarding *Batchelor* issues. Nevertheless, we note briefly that we would find this error, which did not infect defendant's first trial, to be an independently sufficient basis to reverse defendant's conviction. We, as a reviewing court, have no way of knowing whether the jury applied the correct definition of implied malice given elsewhere in its instructions, or the erroneous language we have focused on here, in reaching their verdict. (See *People v. Gay* (2008) 42 Cal.4th 1195, 1225-1226 ["we, as a reviewing court, have 'no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict'"].) And, as discussed above, we reject the People's argument that the evidence against defendant was "overwhelming." We would find the error to be prejudicial under either the federal or

*[footnote continued from previous page]*
characterize this portion of the instruction as "arguably superfluous." In our view, particularly because there was no charge with a mens rea of negligence at issue in defendant's second trial, there is nothing arguable about it, and "erroneous" is a more apt description than "superfluous."

16

state harmless error analysis.  (See *Chapman v. California* (1967) 386 U.S. 18, 24;

*People v. Watson* (1956) 46 Cal.2d 818, 836.)

## III.  DISPOSITION

The conviction of second degree murder is reversed.  In all other respects, the

judgment is affirmed.

CERTIFIED FOR PUBLICATION


          HOLLENHORST       
                                  J.

We concur:


     RAMIREZ        
                    P. J.

     CODRINGTON      
                    J.