Filed 8/3/17

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re L.L., a Person Coming Under the Juvenile Court Law. | D071661 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., Plaintiffs and Respondents, v. D.Z. et al., Defendants and Appellants. | (San Diego County Super. Ct. No. J515323B) |

APPEAL from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge. Affirmed in part; reversed in part and remanded with directions.

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant D.Z.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant T.L.

M. Elizabeth Handy for Respondent B.S.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief County Counsel, and Paula C. Roach, Deputy County Counsel, for Plaintiff and Respondent San Diego County Health and Human Services Agency.

The juvenile court issued an order finding B.S. is a presumed father of L.L., a 10-year-old girl, pursuant to Family Code[1] section 7611, subdivision (d), and also finding he is a third parent pursuant to section 7612, subdivision (c). T.L., another presumed father of L.L., and D.Z., L.L.'s mother (Mother), appeal that order, arguing: (1) there is insufficient evidence to support the court's finding that B.S. is a presumed father of L.L. under section 7611, subdivision (d); (2) the court erred in interpreting section 7612, subdivision (c), and by finding B.S. is a third parent under that statute; and (3) the court erred by not conducting the weighing process between the claims of the two presumed fathers that section 7612, subdivision (b), requires. Based on our reasoning below, we conclude there is substantial evidence to support the court's finding that B.S. is a presumed father of L.L., but the court erred in interpreting section 7612, subdivision (c), by finding B.S. is a third parent under that statute, and by not conducting the weighing process required under section 7612, subdivision (b).

FACTUAL AND PROCEDURAL BACKGROUND

L.L. was born in 2006. Her birth certificate named Mother and T.L. as her parents.

---

[1] All statutory references are to the Family Code unless otherwise specified.

2

In June 2016, a probation department search of Mother's home found drugs, drug paraphernalia, and sulfuric acid. Mother was arrested for probation violations and placed in custody at the Las Colinas Detention Facility. L.L. was taken into protective custody and detained at the Polinsky Children's Center.

On June 9, the San Diego County Health and Human Services Agency (Agency) filed a dependency petition on behalf of L.L. pursuant to Welfare and Institutions Code section 300, subdivision (b), alleging she was at substantial risk of neglect by her parents' failure to provide her with adequate food, clothing, shelter, or medical treatment. In its report for L.L.'s detention hearing, Agency stated that L.L. had previously been taken into protective custody on her birth in 2006 because she tested positive for amphetamines and methamphetamines. Mother and T.L. reunified with L.L. later that year.[2] In 2016, T.L. lived in the home with his girlfriend, L.L., Mother, and her boyfriend. Mother and T.L. had extensive criminal histories. An Agency social worker interviewed L.L., who was mature for her age. L.L. stated that T.L. was the only person in her home who went to work, was the one who made sure she was fed well, and transported her to school every morning. T.L. had been her father since she was one year old. Her biological father had been in jail for years. L.L. asked for visits with T.L.

Mother told the Agency social worker that L.L.'s biological father was B.S., who was a "murderer" sentenced to state prison in 2010, and T.L. was the only father L.L. had

_____

[2]  L.L.'s older brother also tested positive for drugs on his birth in 2004, was declared a dependent of the juvenile court, and ultimately was adopted in 2005, after Mother and T.L. failed to reunify with him.

ever known. Although B.S. sought and was awarded visitation with L.L. shortly after her birth, Mother stated she rarely allowed him to visit L.L.

At L.L.'s detention hearing, the juvenile court amended the petition to designate T.L. as a presumed father pursuant to sections 7611, subdivision (d), and 7573. It detained L.L. out of the home, ordered Agency to offer voluntary services to the parents, and set a date for the jurisdiction and disposition hearing.

At the jurisdiction and disposition hearing, the court recognized B.S. as an alleged father of L.L. T.L. submitted a 2013 family court stipulation and order for custody of L.L. The court stated it was in possession of a file from another family court case in which B.S. was the petitioner and involved custody orders. It then set a date for a trial on the dependency petition's allegations. Prior to that trial, the court received a letter from B.S. in which he stated he was awarded joint custody of L.L. after filing a court case, but Mother and T.L. refused to allow L.L. to interact with him. Records from B.S.'s criminal case showed that in 2005 he stabbed and killed a person, pled guilty in 2011 to voluntary manslaughter, and was sentenced to a prison term of 12 years.

In July, Mother was sentenced in her criminal case and later released on the condition that she complete a residential drug treatment program. At a settlement conference in L.L.'s case, the juvenile court raised a question regarding B.S.'s standing in the case. B.S.'s counsel requested a paternity test, which the court denied, but B.S. remained an alleged father.

4

The court held a contested jurisdiction and disposition hearing and found it had jurisdiction, removed L.L. from parental care, placed her with relatives, ordered visitation with L.L. for Mother and T.L., and set dates for review hearings.

A couple of months later, the court held a special hearing on B.S.'s request to address the issue of L.L.'s paternity. B.S. submitted, inter alia, a 2007 family court order finding he established a parental relationship with L.L. and awarding him joint legal custody of her with Mother and regular visitation with L.L.[3] B.S. requested that the juvenile court elevate his status as a parent and renewed his request for a genetic paternity test. After clarifying confusion regarding L.L.'s name,[4] the court found there was insufficient evidence at that time for it to find B.S. was either a presumed father or a father under *Adoption of Kelsey S.* (1992) 1 Cal.4th 816. However, it ordered a genetic test to determine whether B.S. was L.L.'s biological father. It also set a date for a trial on his request for a presumed parent finding.

The results of the genetic test showed that B.S. is L.L.'s biological father. The court amended the dependency petition to reflect that B.S. is her biological father.

In November, Mother was released from custody and began drug treatment, individual therapy, and a parenting course. She regularly visited L.L. Although T.L. had struggled with homelessness, in January 2017, he entered a sober living environment,

---

[3] The 2007 family court order stated that L.L. would be in B.S.'s care on Monday, Wednesday, and Sunday from 1:00 p.m. to 6:00 p.m.

[4] B.S.'s documents used a different name for L.L., which he explained was the name he and Mother agreed on at the time of L.L.'s birth, but Mother subsequently changed it to L.L.

maintained his employment, engaged in services, and tested negative for drugs. He regularly visited L.L. L.L. stated she loved spending time with T.L. and felt safe when visiting him.

In its report for the six-month review hearing, Agency recommended that the court offer an additional six months of services for Mother and T.L. and continue L.L.'s placement out of the home. Agency reported that T.L. loved and cared for L.L. and wanted her back in his care.

On January 23, 2017, the court first conducted the contested hearing on B.S.'s request for a finding he is a presumed father of L.L. T.L., Mother, L.L.'s counsel, and Agency all argued that B.S. did not qualify as a presumed father. T.L. and Agency additionally argued that B.S. did not qualify as a third parent. When the court asked what detriment L.L. would suffer if B.S. was named a third parent, an Agency social worker replied that L.L. did not want to visit B.S. or his father (i.e., her biological paternal grandfather). L.L. did not know B.S. and was uncomfortable because she knew why he was incarcerated. L.L.'s counsel confirmed L.L. was uncomfortable with B.S., had no relationship with him, and would experience instability if she had to deal with him while trying to reunify with T.L. and Mother. L.L.'s counsel opined that adding B.S. as a parent would be detrimental to L.L. at that time.

B.S. argued it would be detrimental to L.L. if he was not found to be a presumed parent. He argued he met the requirements of a presumed father because he supported L.L., listed her on his insurance, and told everyone she was his child. He had also filed a family court action to obtain a custody and visitation order.

6

The court found B.S. was a presumed father under section 7611, subdivision (d). It further found it would not be detrimental to L.L. if a third parent for her was added and therefore found B.S. was a third parent under section 7612, subdivision (c).

The court then conducted the six-month review hearing. It ordered supervised telephone calls for B.S. and supervised visits if L.L. was willing to have visits with him. The court adopted Agency's recommendations and set a date for the 12-month permanency hearing. Mother and T.L. timely filed notices of appeal challenging the court's January 23, 2017 order.[5]

## DISCUSSION

## I

*Substantial Evidence to Support Finding That B.S. Is*
*a Presumed Father under Section 7611, Subdivision (d)*

T.L. and Mother contend there is insufficient evidence to support the juvenile court's finding that B.S. is a presumed father under section 7611, subdivision (d). In particular, they argue the evidence showed that B.S. did not have an existing relationship with L.L. at the time of the January 23, 2017 hearing, had not visited her since 2010, had not held her out as his own child for many years, never received her into his home, and never had a parental relationship with her. Taking a position contrary to its position below, Agency argues there is substantial evidence to support the court's finding that B.S.

_____

[5]     Given L.L.'s obvious interest in the resolution of the issues on appeal, we question why counsel was not appointed to represent her interests on appeal. Nevertheless, we doubt our disposition of this case would have been different had counsel been appointed for her.

7

is a presumed father of L.L. under section 7611, subdivision (d).[6] B.S. joins in, and agrees with, Agency's arguments on this issue.

A

The Uniform Parentage Act (UPA) (§ 7600 et seq.) "provides the framework by which California courts make paternity determinations. (§ 7610, subd. (b).)" (*Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937.) Section 7611 sets forth various rebuttable presumptions for determining a child's natural parent. (*Dawn D.*, at p. 937.) A presumption under section 7611 generally "is a rebuttable presumption affecting the burden of proof and may be rebutted in an appropriate action only by clear and convincing evidence." (§ 7612, subd. (a).) "A person who claims entitlement to presumed parent status has the burden of establishing by a preponderance of the evidence the facts supporting the entitlement." (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 774.) Under section 7611, subdivision (d), a person may qualify as a presumed parent if he or she "receives the child into his or her home and openly holds out the child as his or her natural child." (§ 7611, subd. (d).) *R.M.* stated: "When determining whether the person has met the statutory requirements of receiving the child into his or her home and openly holding the child out as his or her own, the court may consider a wide variety of factors,

---

6    T.L. and Mother argue that Agency forfeited the position that B.S. qualified as a presumed parent under section 7611, subdivision (d), by not so arguing below and instead arguing B.S. did not qualify as a presumed father. We disagree and conclude Agency may take a position on appeal that is contrary to its position in the juvenile court. In any event, T.L. and Mother are not prejudiced because B.S. makes the same argument as Agency does on appeal and we agree with that position. None of the cases cited by T.L. and Mother are apposite to this case or otherwise persuade us to reach a contrary conclusion.

8

including the person's provision of physical and/or financial support for the child, efforts to place the person's name on the birth certificate, efforts to seek legal custody, and the breadth and unequivocal nature of the person's acknowledgement of the child as his or her own.  [Citation.]  No single factor is determinative; rather, the court may consider all the circumstances when deciding whether the person demonstrated a parental relationship by holding out the child as his or her own and assuming responsibility for the child by receiving the child into his or her home.  [Citations.]"  (*R.M.*, at p. 774.)  Furthermore, "[b]iological fatherhood does not, in and of itself, qualify a man for presumed father status under section 7611."  (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018.)  "[T]he core issues are the person's established relationship with and demonstrated commitment to the child."  (*In re M.R.* (2017) 7 Cal.App.5th 886, 898.)  "Presumed parent status is afforded only to a person with a fully developed parental relationship with the child . . . ."  (*R.M.*, at p. 776, italics omitted.)

On appeal, we independently interpret statutes and apply the substantial evidence standard in reviewing a juvenile court's finding whether a person is a presumed parent. (*In re M.R.*, *supra*, 7 Cal.App.5th at p. 898; *In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088 (*Donovan L.*).)  In so doing, we consider the evidence and all reasonable inferences therefrom in favor of the court's finding and do not reweigh the evidence or credibility of witnesses.  (*In re M.R.*, at p. 898; *In re A.A.* (2003) 114 Cal.App.4th 771, 782.)

B

9

T.L. and Mother initially argue that for B.S. to be found a presumed father under section 7611, subdivision (d), he was required to show that he qualified as a presumed father under that statute at the time of the parentage determination (i.e., on January 23, 2017). Citing the present tense language of section 7611, subdivision (d), *In re Alexander P.* (2016) 4 Cal.App.5th 475, and other cases, they argue qualification as a presumed father in the past is insufficient to show current qualification at the time of a parentage determination by a juvenile court. Agency and B.S. disagree and cite *In re J.O.* (2009) 178 Cal.App.4th 139 (*J.O.*), as support for their position that once a parent has met the criteria of section 7611, subdivision (d), that parent qualifies as a presumed parent despite subsequent absence from the child's life. Although there appears to be a split of authority on this issue, we are persuaded that the position taken by Agency and B.S. on appeal is more consistent with the legislative scheme of the UPA.

In *J.O.*, *supra*, 178 Cal.App.4th 139, the birth certificates for three children identified the appellant as their father. (*Id.* at p. 145.) The mother's paternity questionnaire stated she and the appellant were not married, but lived together at the time of the children's births, and he held himself out as their father and accepted them openly into his home. (*Ibid.*) However, after the couple separated, the children no longer lived with him and, after three years, had no further telephone contact with him. (*Ibid.*) The appellant stated he had moved to Missouri to accept a job, anticipating the family would reunite there. (*Ibid.*) Although the juvenile court found the appellant had held himself out as the children's father and openly accepted them into his home for one or more years, the court, citing *In re A.A.*, *supra*, 114 Cal.App.4th 771, concluded that " 'even if

10

someone has held himself out as the father, and openly accepted the children into his home,' " his presumed father status could " 'fall away.' "[7] (*J.O.*, at p. 146.) The juvenile court therefore found the appellant was an alleged father only and not a presumed father under section 7611, subdivision (d), because he had not had contact with the children or provided them with financial support for many years and therefore the section 7611, subdivision (d) presumption had been rebutted. (*J.O.*, at pp. 146, 148.)

On appeal, *J.O.* concluded the juvenile court erred by finding the appellant did not qualify as a presumed father under section 7611, subdivision (d). (*J.O.*, *supra*, 178 Cal.App.4th at pp. 143, 149-151.) The court stated that the appellant, the mother, and the children all recognized the appellant as the children's father, his name was on their birth certificates, and he supported them for several years. (*Id*. at p. 149.) The court also expressed concern that the failure to grant the appellant presumed father status could deprive them of a second parent who could provide them with a home if their mother failed to reunify with them. (*Ibid*.) The court found no authority for the proposition that abandonment combined with failure to support is sufficient to rebut a section 7611, subdivision (d) presumption. (*J.O.*, at p. 149.) Although a biological father's failure to maintain a relationship with the children, or to provide support for them would be relevant in weighing the competing claims of two presumed fathers under section 7612, subdivision (b), the court stated that statute had no applicability to the instant case and, in

---

7    Specifically, the appellant accepted the youngest child into his home for one year, the middle child for three years, and the oldest child for four years. (*J.O.*, *supra*, 178 Cal.App.4th at p. 146.)

11

particular, the appellant's qualification as a presumed father under section 7611, subdivision (d). (*J.O.*, at pp. 149-150.) The court concluded: "[S]ection 7611, [subdivision] (d)[,] requires nothing more than that the presumed father candidate receive the children into his home and openly hold them out as his natural children." (*Id.* at p. 151.) It further concluded the juvenile court had correctly found the appellant had met the foundational requirements for presumed father status under section 7611, subdivision (d), but incorrectly found that presumed father status had been rebutted based on his failure to keep in contact with and support the children. (*J.O.*, at p. 151.) Therefore, the court reversed the finding the appellant was only an alleged father. (*Id.* at p. 154.)

Without citing or discussing *J.O.*, *supra*, 178 Cal.App.4th 139, or any other case or authority in support, the court in *In re Alexander P.*, *supra*, 4 Cal.App.5th 475, stated: "A judgment of presumed parenthood represents a finding that, at the time of entry of the judgment, the person qualified as a presumed parent." (*Id.* at p. 491.) Reasoning that presumed parenthood, unlike biological parenthood, is based on the personal relationship between the adult and child, which relationship can change, the court stated a juvenile court "must determine which person or persons stand in the relationship of presumed parent to the child at time of the dependency proceeding." (*Ibid.*) Addressing the circumstances of that case involving a man who had been found to be a presumed father by a family court prior to the filing of the dependency petition, the court concluded: "Because a prior judgment of presumed parenthood represents a finding about a past, rather than a present, relationship, it is binding on the juvenile court only if there is no

12

evidence of a change in the relationship between the adult and child since entry of the judgment." (*Ibid.*)

Although T.L. and Mother correctly assert that the language quoted above from *In re Alexander P.*, *supra*, 4 Cal.App.5th 475, provides support for their position that section 7611, subdivision (d), would require B.S. to show that he received L.L. into his home and held her out as his own child at the time of the January 23, 2017 hearing, we are not persuaded by the reasoning in that case and decline to follow it. We are, instead, persuaded by the reasoning in *J.O.*, *supra*, 178 Cal.App.4th 139, and conclude that if B.S. showed he met the requirements of section 7611, subdivision (d), at some point in L.L.'s life, his subsequent failure to continue to meet those requirements (e.g., at the time of the January 23, 2017 hearing) did not rebut the presumption that he is a presumed father under that statute. The express language of section 7611, subdivision (d), does not require an adult to show he or she had an existing relationship with the child at the time of the juvenile court's determination of the presumed parent issue. If the Legislature had so intended, we presume it would have made that requirement explicit in the statute. Absent such language, we, unlike the court in *In re Alexander P.*, decline to make the showing of an existing relationship an implied requirement for presumed parent status under section 7611, subdivision (d).

Contrary to the argument of T.L. and Mother, the fact that section 7611, subdivision (d), uses present tense verbs (i.e., "receives" and "holds") in describing its two-element test, does not persuade us that we should interpret that statute as including the additional implied requirement of an existing relationship. Rather, we construe its

13

use of present tense verbs as applying those requirements actively as of any point in time during a child's life. Therefore, we conclude that if there is substantial evidence to support the juvenile court's finding that B.S. met the requirements of section 7611, subdivision (d), at some point in L.L.'s life, he qualified as a presumed father under that statute and his subsequent failure to continue to meet those requirements or otherwise have an existing relationship with L.L. as of the time of the January 23, 2017 hearing did not rebut the presumption.

As *J.O.*, *supra*, 178 Cal.App.4th 139, recognized, a presumed father's failure to maintain a relationship with a child or to provide support for them would be relevant in weighing the competing claims of two presumed fathers under section 7612, subdivision (b), but it has no relevance to, or application in, a juvenile court's determination whether a person initially qualifies as a presumed father under section 7611, subdivision (d). (*J.O.*, at pp. 149-150.) None of the other cases cited by T.L. and Mother are factually apposite to this case or otherwise persuade us to reach a contrary conclusion. (See, e.g., *Donovan L.*, *supra*, 244 Cal.App.4th 1075; *In re D.M.* (2012) 210 Cal.App.4th 541; *In re A.A.*, *supra*, 114 Cal.App.4th 771.)

C

T.L. and Mother also argue the record shows that B.S. never received L.L. into his home or openly held her out as his own child as required to qualify as a presumed father under section 7611, subdivision (d). Agency and B.S. disagree and argue there is substantial evidence to support the juvenile court's finding that B.S. met those two requirements and qualified as a presumed father under section 7611, subdivision (d).

14

Based on our review of the record, we conclude there is substantial evidence to support the juvenile court's finding that B.S. qualified as a presumed father under section 7611, subdivision (d). In 2007, B.S. filed an action in family court and obtained an order that found he had established a parental relationship with L.L. and awarded him joint legal custody of her with Mother and regular visitation with L.L. In his parentage inquiry form submitted in this case, B.S. stated, under penalty of perjury, that L.L. had been to his home "a couple of times a month, from birth thru 4 1/2 [years] old (I wish more)." He also stated he told "everyone" that he was L.L.'s father, including "my family, friends, co-workers, acquaintances, and anyone else, even perfect strangers, because she's perfect and she's mine." He listed the names and addresses of seven or eight individuals whom he had told L.L. was his child. He also supported L.L., stating: "[E]very time I saw [Mother] I'd give her money. Every time I went to her house I brought groceries and money and toys . . . and DVDs and rubberized flooring and fencing material and jewelry and clothes and books and musical instruments and car seat and stroller and landscape materials." Although he was not listed on L.L.'s birth certificate, he had agreed to be listed as her father on it. Also, when he worked at a grocery store, he listed L.L. "as my daughter on everything (insurance, etc.)."

The above evidence is sufficient to support a finding that B.S. received L.L. into his home by regularly and consistently visiting with L.L in his home over a period of four and one-half years, successfully filing a family court action to obtain a joint legal custody and visitation order, and by supporting Mother and L.L. with money, groceries, clothing, books, and other children's items. Contrary to the argument of T.L. and Mother, L.L. was

15

not required to live with B.S. in order for him to receive her into his home within the meaning of section 7611, subdivision (d). (Cf. *In re M.R.*, *supra*, 7 Cal.App.5th at pp. 899-900 [upheld presumed father finding where relationship with child was developed and he received child into his home primarily through visits]; *R.M. v. T.A.*, *supra*, 233 Cal.App.4th at pp. 780-781 [upheld presumed father finding where mother and child visited and stayed with noncustodial parent for weeks or months at a time]; *In re A.A.*, *supra*, 114 Cal.App.4th at pp. 783-784 [upheld presumed father finding where child regularly visited him in his home and he provided financially for child].)

The above evidence also is sufficient to support a finding that B.S. held L.L. out as his own child by telling family members, friends, and strangers that L.L. was his child, naming her as his child on insurance and other employment forms, and filing an action in family court to obtain joint legal custody to, and visitation with, L.L. Based on the above evidence, the juvenile court reasonably found B.S. had received L.L. into his home, held her out as his own child, and had developed a parent-child relationship over a four and one-half year period. Therefore, there is substantial evidence to support its finding that B.S. qualified as a presumed parent under section 7611, subdivision (d). As discussed above, contrary to the argument of T.L. and Mother, the fact that B.S. went to prison in 2011 and no longer maintained that relationship with L.L. did not preclude him from qualifying as a presumed parent under section 7611, subdivision (d), as of the January 23, 2017 hearing. (*J.O.*, *supra*, 178 Cal.App.4th at pp. 149-151.)

II

*Insufficient Evidence to Support Section 7612, Subdivision (c), Third Parent Finding*

16

T.L., Mother, and Agency contend the juvenile court erred in interpreting section 7612, subdivision (c), and by finding B.S. is a third parent under that statute.

A

At the January 23, 2017 hearing, T.L. and Agency argued, inter alia, that B.S. did not qualify as a third parent under section 7612, subdivision (c). Agency stated B.S. did not have a relationship with L.L. It stated L.L. did not want to visit B.S. Its social worker stated L.L. did not know B.S., but L.L. knew why he was incarcerated and that made her uncomfortable. L.L.'s counsel stated she did not "see a relationship" between L.L. and B.S. B.S.'s counsel implicitly conceded that B.S. did not have a current relationship with L.L., stating: "He did try to maintain a relationship with [L.L.]." The record showed that in 2011, B.S. was sentenced to a prison term of 12 years.

The juvenile court stated that L.L. did not "at this time . . . have a strong relationship with [B.S.]" After finding B.S. is a presumed father under section 7611, subdivision (d), the court further found that "it would not be detrimental to [L.L.] to have a third parent added" under section 7612, subdivision (c). Accordingly, it found B.S. is a third parent under section 7612, subdivision (c).

B

"As a general rule, ' "there can be only one presumed father." ' " (*Donovan L.*, *supra*, 244 Cal.App.4th at p. 1086.) However, effective January 1, 2014, section 7612 was amended to add new subdivision (c), which allows for the designation of a third parent for a child in an appropriate case. Section 7612, subdivision (c), provides:

"In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child. In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."

In enacting section 7612, subdivision (c), the Legislature expressed its intent that it "only apply in the rare case where a child truly has more than two parents, and a finding that a child has more than two parents is necessary to protect the child from the detriment of being separated from one of his or her parents." (Stats. 2013, ch. 564, § 1.)

In *Donovan L.*, *supra*, 244 Cal.App.4th 1075, we examined the legislative history of section 7612, subdivision (c), and harmonized it with the UPA, concluding: "There is no indication the Legislature intended *section 7612, subdivision (c)* to apply to a person . . . who, at the time of the contested disposition hearing on parentage, lacked an existing relationship with the child. A person who lacks an existing parent-child relationship is not a child's 'parent in every way.' [Citation.]" (*Donovan L.*, at pp. 1092-1093.) We further concluded: " '[A]n appropriate action' for application of *section 7612, subdivision (c)* is one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' [Citation.]" (*Id.* at pp. 1093-1094.) In that case, the juvenile court found the putative third parent " 'does not have a strong relationship,' " with the child. (*Id.* at p. 1092.) Because the court found the putative third parent did not have an

18

existing parent-child relationship with the child, we concluded there was no substantial evidence to support a finding of detriment under section 7612, subdivision (c). (*Donovan L.*, at p. 1094.)

C

We agree with T.L., Mother, and Agency that the juvenile court misinterpreted and misapplied section 7612, subdivision (c), in finding B.S. is a third parent under that statute. First, the court misunderstood the detriment required for designating a third parent under section 7612, subdivision (c). Under its express language, section 7612, subdivision (c), allows the designation of a third parent only in appropriate cases where " 'recognizing only two parents would be detrimental to the child.' " (*Donovan L.*, *supra*, 244 Cal.App.4th at pp. 1090-1092.) In this case, the court did not consider whether recognizing only two parents (i.e., Mother and T.L.) would be detrimental to L.L., but instead found it would not be detrimental to L.L. if B.S. was added as a third parent. In so doing, the court misinterpreted and misapplied section 7612, subdivision (c).

Furthermore, we agree with the argument of T.L., Mother, and Agency that B.S. could not be recognized as a third parent under section 7612, subdivision (c), because there is no evidence in the record showing he had an *existing* relationship with L.L. In fact, like the juvenile court in *Donovan L.*, *supra*, 244 Cal.App.4th at page 1092, the court in this case found L.L., at the time of the January 23, 2017 hearing, did *not* have a "strong relationship" with B.S. Absent an *existing* relationship with L.L., there is no ground on which B.S. could be recognized as a third parent under section 7612, subdivision (c). (*Donovan L.,* at pp. 1092-1094.) As discussed above, all of the evidence

19

submitted at the hearing, as well as arguments of counsel, showed B.S. did not have an existing relationship with L.L. at that time. His contact with L.L. ended in 2010. In 2011, he was sentenced to a 12-year prison term, and there is no evidence showing he had any contact with L.L. since then. The record shows that at the time of the hearing, B.S. had had no relationship with L.L. for at least six years. Accordingly, there is insufficient evidence to support a finding that B.S. had an existing relationship of any sort, much less a parent-child relationship, with L.L. at the time of the hearing. Therefore, the court erred by finding B.S. is a third parent under section 7612, subdivision (c). (*Donovan L.*, at pp. 1092-1094; cf. *In re M.Z.* (2017) 5 Cal.App.4th 53, 66-68 [juvenile court correctly found § 7612, subd. (c), did not apply because putative third parent did not have existing parent-child relationship with children].)

## III

### *Section 7612, Subdivision (b), Weighing Process*

T.L., Mother, and Agency contend the juvenile court also erred by not conducting the weighing process required by section 7612, subdivision (b), and determining the competing claims of T.L. and B.S. as L.L.'s presumed father. T.L. and Mother further argue no remand is necessary for the court to conduct that weighing process because no court could reasonably conclude B.S. should be L.L.'s presumed father. Agency argues we should remand the matter for the juvenile court to conduct that weighing process. We agree with Agency.

### A

If a third parent is not recognized under section 7612, subdivision (c), then a juvenile court generally must weigh the competing presumptions of two or more presumed fathers and determine which one should be recognized as the child's presumed father. (§ 7612, subd. (b); *Donovan L.*, *supra*, 244 Cal.App.4th at pp. 1087, 1093-1094.) Section 7612, subdivision (b), provides: "If two or more presumptions arise under Section 7610 or 7611 that conflict with each other, or if a presumption under Section 7611 conflicts with a claim pursuant to Section 7610, the presumption which on the facts is founded on the weightier considerations of policy and logic controls." Accordingly, where there are conflicting claims of two or more presumed fathers, the juvenile court must make factual findings as to each claim and then determine which claim is entitled to greater weight under section 7612, subdivision (b). (*In re P.A.* (2011) 198 Cal.App.4th 974, 981.)

B

In this case, because the juvenile court found B.S. is a third parent under section 7612, subdivision (c), it did not undertake the weighing process to resolve the competing claims of T.L. and B.S. under section 7612, subdivision (b). By failing to do so, the court erred. (§ 7612, subd. (b); *Donovan L.*, *supra*, 244 Cal.App.4th at pp. 1093-1094; *In re P.A.*, *supra*, 198 Cal.App.4th at p. 981.) However, contrary to the argument of T.L. and Mother, we conclude the appropriate disposition is to a remand the matter to the juvenile court for it to conduct an evidentiary hearing under section 7612, subdivision (b), make factual findings as to the competing claims of T.L. and B.S. as L.L.'s presumed father, and conduct the weighing process required by that statute.

21

## DISPOSITION

We reverse the January 23, 2017 order to the extent it found that B.S. is a third parent under section 7612, subdivision (c). In all other respects, we affirm the order. The matter is remanded with directions that the juvenile court: (1) enter a new order finding that B.S. is not a third parent under section 7612, subdivision (c); and (2) conduct an evidentiary hearing under section 7612, subdivision (b), make factual findings as to the claims of T.L. and B.S. as L.L.'s presumed father, and weigh their competing claims as required by section 7612, subdivision (b).

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

DATO, J.

22