Filed 9/24/20  In re K.B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | B300633 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19LJJP00257A) |
| Plaintiff and Respondent, | |
| v. | |
| DANIEL M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steven E. Ipson, Judge Pro Tempore.  Affirmed.

Jacques Alexander Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

Daniel M. appeals from the juvenile court's order and finding that he is not the presumed father of K.B. Daniel M. asserts the juvenile court's finding was not supported by substantial evidence, considering he received K.B. into his home, held her out as his child, and provided her care and necessities. We disagree and affirm.

## BACKGROUND

The family consists of Daniel M., mother, two-year-old K.B., and one-year-old A.M.[1]

Daniel M. is K.B. and A.M.'s biological father. He stated that he lived with mother and K.B. for three months from the time of K.B.'s birth in May 2018. However, in June 2018, Daniel M. was arrested for grand theft auto and released from custody in December 2018. Three months after his release, Daniel M. was arrested for spousal abuse after he punched mother in the back and stomach while she was pregnant with A.M. Daniel M. was sentenced to 730 days in custody with a projected release date of March 2020.[2]

---

[1] K.B. is the only child subject to this appeal. A.M. was born one month after the commencement of this action.

[2] Six weeks after filing the petition, the Department of Children and Family Services (DCFS) filed another Welfare and Institutions Code section 300 petition on behalf of newborn A.M. The second petition contained the same allegations against parents, as well as allegations that Daniel M. had a history of substance abuse.

DCFS filed a Welfare and Institutions Code[3] section 300 petition, alleging that K.B. was at serious risk of harm due to the parents' history of domestic violence, which included the most recent altercation that led to Daniel M.'s arrest. The juvenile court detained K.B. and placed the child with maternal grandmother.

At arraignment, Daniel M. requested presumed father status. His parentage form stated that he believed he was K.B.'s father, that he lived with her from May 2018 to August 2018 and that he visited her thereafter, that he watched videos with her, took her on walks, fed her, changed her diapers, and told everyone that K.B. was his child. Daniel M. also indicated that he financially supported K.B. and that she spent time with her paternal grandmother. Mother objected to Daniel M.'s request for presumed father status. Her parentage form stated that, while Daniel M. held out K.B. as his child, he had not accepted K.B. into his home. Mother also noted that Daniel M. had not supported K.B. financially, paid rent, purchased necessities, or had a relationship with K.B. DCFS and K.B. also objected to presumed father status. The juvenile court concluded that Daniel M.'s alleged father status was appropriate but gave him the opportunity to present additional evidence at the next hearing and ordered a DNA test.

At the adjudication hearing, the juvenile court sustained the petition as to Daniel M. under section 300, subdivision (b). Daniel M. again requested presumed father status based on his DNA test results showing he was K.B.'s biological father, but

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

presented no additional evidence.  The juvenile court elevated Daniel M.'s status to biological father and indicated it would address the issue again at disposition.  The juvenile court also granted Daniel M.'s request that DCFS provide him photographs and monthly updates of the children while he was incarcerated, and to assess paternal grandmother as a monitor for visitation.

At disposition, Daniel M. requested the juvenile court to elevate his status from biological father to presumed father and noted that DCFS had not provided photos or facilitated visits with the children since he made those requests to the juvenile court.  Other than DCFS's failure to follow through with Daniel M.'s requests, he presented no additional evidence regarding his relationship with K.B.  DCFS stated that, in July 2019, it asked paternal grandmother to provide a background check and fingerprints for the visitation assessment, but had not received any results at the time of disposition in September 2019.

The juvenile court concluded that Daniel M. failed to meet his burden to establish presumed father status as he had not received K.B. into his home.  Nevertheless, the juvenile court ordered reunification services for him.

## DISCUSSION

Daniel M. challenges the juvenile court's order that he is not the presumed father of K.B.

"In dependency proceedings, fathers are divided into four categories:  de facto fathers, alleged fathers, natural fathers and presumed fathers.  A man, such as a stepfather, who has assumed the role of parent, is a 'de facto father.'  A man who may be the father of the dependent child but has not been established to be the natural or presumed father is an 'alleged father.'  A man who has been established to be the biological father is a 'natural

4

father.'  A man who has held the child out as his own and received the child into his home is a 'presumed father.'  A 'natural father' can be, but is not necessarily, a 'presumed father' and a 'presumed father' can be, but is not necessarily, a 'natural father.' " (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801, fns. omitted.)  Only a presumed father is entitled to reunification services and custody under sections 361.5, subdivision (a) and 361.2.  (*In re Jerry P.*, at p. 801.)  It distinguishes those who have demonstrated a full commitment to their parental responsibilities regardless of biology.  (*Id.* at pp. 801–802.)

An individual may be considered a presumed father if he publicly acknowledges paternity and receives the child into his home.  (Fam. Code, § 7611, subd. (d).)  Under this standard, the juvenile court may consider a variety of factors, including the person's provision of physical and financial support for the child, efforts to place the person's name on the birth certificate, efforts to seek legal custody, and the breadth and unequivocal nature of the person's acknowledgement of the child as his or her own.  No single factor is determinative, and the juvenile court may consider all the circumstances when deciding whether the person demonstrated a parental relationship by holding out the child as his or her own and assuming responsibility for the child by receiving the child into his or her home.  (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1310.)

"A person who claims entitlement to presumed parent status has the burden of establishing by a preponderance of the evidence the facts supporting the entitlement."  (*R.M. v. T.A.* (2015) 233 Cal.App.4th 760, 774.)  We review a juvenile court's determination of presumed parentage status for substantial evidence.  (*In re D.A.* (2012) 204 Cal.App.4th 811, 824.)

5

It is undisputed that Daniel M. is K.B.'s biological father and that he held himself out as such. However, biological fatherhood alone is not enough to establish presumed parentage. (*In re Jerry P., supra*, 95 Cal.App.4th at p. 801.) Further, mother disputed Daniel M.'s claims that he financially supported and brought K.B. into his home. Neither parent testified with respect to these claims and thus the juvenile court was left with two competing parentage forms. Clearly, the juvenile court believed mother and was thus left with Daniel M.'s claims that he lived with K.B. for the three months after her birth and visited her with paternal grandmother. The record is silent on the frequency of these visits with paternal grandmother while showing that Daniel M. was incarcerated for the vast majority of K.B.'s life. The juvenile court could have found that, considering this remaining evidence of paternal grandmother's visits and Daniel M.'s requests to DCFS for photographs and updates, he did not meet his burden to elevate his status from biological father to presumed father of K.B.

We conclude the juvenile court's finding that Daniel M. was not the presumed father of K.B. was supported by substantial evidence.

6

**DISPOSITION**

The order is affirmed.

NOT TO BE PUBLISHED.

DHANIDINA, J.

We concur:

EDMON, P. J.

LAVIN, J.