Filed 7/19/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| M.M.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>D.V. et al.,<br><br>    Defendants and Respondents. | D077468<br><br>(Super. Ct. No. EFL002133) |

APPEAL from a judgment of the Superior Court of Imperial County, L. Brooks Anderholt, Judge.  Affirmed.

Law Offices of Ben Aguilar and Benjamin Aguilar, for Plaintiff and Appellant.

Stephen Temko, for Defendants and Respondents.


M.M. appeals from a judgment denying his petition to establish a parental relationship with his biological son (Child).  M.M. filed the petition after he learned, when Child was two years old, that he was Child's biological father.  M.M. alleged that he was entitled to status as a presumed father under the principles of due process and equal protection set forth in *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 (*Kelsey S.*) for unwed fathers who are

prevented by the mother or by a third party from establishing presumed father status. M.M. does not dispute the parental status of T.M., who is married to Child's mother (Mother), is listed on Child's birth certificate as the father, and signed a Voluntary Declaration of Parentage at the Child's birth. However, M.M. contends that he should be accorded status as Child's *third* parent pursuant to Family Code section 7612, subdivision (c).[1]

For the purpose of our analysis, we assume without deciding that M.M. is entitled to presumed parent status as a *Kelsey S.* father, making him eligible to be adjudged a third parent to Child. However, even assuming that M.M. is entitled to presumed parent status, we conclude that the trial court properly determined that M.M. should not be adjudged a third parent due to his lack of an existing relationship with Child. Accordingly, we affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

M.M. and Mother were in a relationship in 2015, which overlapped with the time period during which Mother began a relationship with T.M.[2] Mother discovered a pregnancy in December 2015 and informed M.M. that he might be the father. However, after a doctor's visit in January 2016, Mother

---

[1]     Unless otherwise indicated, all further statutory references are to the Family Code.

[2]     The trial on M.M.'s petition was not transcribed by a court reporter. Accordingly, the parties arrived at a settled statement, which sets forth the testimony presented at trial, and the trial court certified the settled statement. Our factual recitation is based on the settled statement, the trial court's factual findings, and the content of the trial exhibits that are included in the appellate record. Although those exhibits are not specifically identified in the settled statement, the exhibit list and a notation on each exhibit indicate that the exhibits were admitted into evidence at trial.

told M.M. that based on the doctor's estimate of the date of conception, M.M. could not be the father.

The Child was born in July 2016. At the time, T.M. believed he was Child's father. T.M. therefore signed a voluntary declaration of parentage and was listed as Child's father on the birth certificate. T.M. and Mother got married when Child was seven months old. In July 2017, a daughter was born to T.M. and Mother. Because the couple's daughter was discovered to have a rare genetic condition that was not present in Child, Mother and T.M. decided to reach out to M.M. to find out if he was Child's father, rather than T.M. M.M. agreed to submit to DNA testing. The results of the DNA test established in January 2019 that M.M. is the biological father of Child. At the time, Child was two years old.

After discovering that M.M. was Child's biological father, Mother permitted M.M. to meet with Child on several occasions for brief periods of time.[3] However, as the trial court found, "there have been no real visits nor was there evidence of any type of bonding between [M.M.] and [Child]." Mother permitted contact between M.M. and Child for a few weeks or months,[4] but she then cut off contact after deciding that "it would be

---

[3]    As shown by exhibits presented at trial, and as reflected in the settled statement, in January 2019, Mother sent a text message to M.M., in which she stated that she was sorry that she previously told M.M. that he was not the father of Child. According to the settled statement, Mother testified that she sent the text message because she was experiencing a manic episode and "did not know what she was saying."

[4]    The record of the evidence presented at trial does not reflect the exact time period during which Mother allowed M.M. to have contact with Child. According to M.M.'s appellate brief, Mother cut off contact in May 2019. That timeline is consistent with Mother's statement in her responsive declaration

confusing and traumatizing to try to introduce a stranger into the child's life and to take away some of his time with the person he viewed as his father." According to the parties' settled statement, M.M. testified that if he had "known prior to January 2019 that [Child] was his biological son, he would have assumed his obligations. But he testified he never offered to pay nor has [h]e paid any child support."

As reflected in the settled statement, "The actions [M.M.] took to establish a relationship with [Child] once he was informed by Mother she would not allow him to have a relationship with the minor, was to retain counsel and open a case to establish his parental rights." Specifically, on September 16, 2019, M.M. filed a petition to establish a parental relationship with Child. Mother filed a response, and T.M. was joined in the action due to his status as Child's father based on, among other things, his execution of a Voluntary Declaration of Parentage at Child's birth. In connection with a motion to dismiss filed by T.M. and Mother, M.M. clarified that he was not attempting to challenge T.M.'s status as Child's father and was not seeking to set aside the Voluntary Declaration of Parentage signed by T.M. Instead, M.M. was seeking to be recognized as a *third* parent to Child pursuant to section 7612, subdivision (c).

A trial was held on February 4, 2020, at which M.M., Mother, and T.M. testified. The trial court issued a ruling on February 24, 2020, denying M.M.'s petition. The trial court concluded that M.M. was not eligible to be adjudged a third parent under section 7612, subdivision (c), because he could obtain such a ruling only if he *first* established that he was a presumed

_____

to M.M.'s petition that "[i]n May, after a couple of months of contemplating the decision, I informed [M.M.] that I decided it would be best for [Child] to grow up knowing about him, but to not have ongoing contact and/or visitation until [Child] was older."

parent.  M.M. sought presumed parent status under the principles of equal protection and due process set forth in *Kelsey S., supra,* 1 Cal.4th 816 applicable to unwed biological fathers who are thwarted in voluntarily undertaking a parental role.[5]  The trial court held that M.M. did not meet the requirements to be identified as a *Kelsey S.* father because M.M. did not do enough to come forward promptly and assume parental responsibilities:

> "It would have been incumbent upon [M.M.] to have demanded testing when first informed he might have been the father should he have truly wished to take his position as [Child's] father.  Instead, he was satisfied with the representations made to him at the time.  He chose to waive any rights he might have had at the time by not taking affirmative steps to confirm what he was told.  The court would be justified in ending its analysis with this finding but goes further by fully analyzing the applicable Family Code sections in connection with [M.M.'s] argument he was misled and his notice was delayed.  Even accepting the late notice argument and [M.M.] was delayed in accepting his role as a father, his failure to pay support or even offer support once he says he began to hold [Child] out as his child was an important factor for the court's decision in this case."

---

[5]     In *Kelsey S.,* our Supreme Court held that the statutory scheme governing paternity decisions "violates the federal constitutional guarantees of equal protection and due process for unwed fathers *to the extent that* the statutes allow a mother unilaterally to preclude her child's biological father from becoming a presumed father and thereby allowing the state to terminate his parental rights on nothing more than a showing of the child's best interest.  If an unwed father promptly comes forward and demonstrates a full commitment to his parental responsibilities—emotional, financial, and otherwise—his federal constitutional right to due process prohibits the termination of his parental relationship absent a showing of his unfitness as a parent. . . .  [W]hen the father has come forward to grasp his parental responsibilities, his parental rights are entitled to equal protection as those of the mother."  (*Kelsey S., supra,* 1 Cal.4th at p. 849.)

After concluding that M.M. was not entitled to be treated as a presumed father pursuant to *Kelsey S.*, *supra*, 1 Cal.4th 816, the trial court gave an alternative ground for its denial of M.M.'s request that he be adjudged to be a third parent under section 7612, subdivision (c). Specifically, the trial court explained that even if it assumed for the sake of its analysis that M.M. was a presumed parent, this was not an appropriate action in which to find that Child has three parents. As the trial court explained, the relevant inquiry under section 7612, subdivision (c) is whether it would be detrimental to Child to have only two parents. Citing *In re Donovan L.* (2016) 244 Cal.App.4th 1075 (*Donovan*), the trial court concluded that because M.M. did not have an existing relationship with Child, no detriment was shown. The trial court's ruling concluded with the observation that "[n]othing in this decision prevents the parties from bringing [M.M.] into [Child's] life at a later time as indicated in the pleadings and testimony received."

M.M. appeals from the judgment.

II.

DISCUSSION

The issue before us is whether the trial court erred in ruling that M.M. should not be adjudged to be a third parent of Child. We begin with an overview of the applicable legal standards.

A.   *Applicable Legal Standards*

"The Uniform Parentage Act (UPA) (§ 7600 et seq.) 'provides the framework by which California courts make [parentage] determinations. (§ 7610, subd. (b).)' " (*In re L.L.* (2017) 13 Cal.App.5th 1302, 1309 (*L.L.*).)[6]

---

[6]   Recent amendments to the Family Code have revised certain provisions

6

A person qualifies as a natural parent either by giving birth or by meeting one of the applicable statutory methods for being adjudged a natural parent. (§ 7610, subd. (a).) Section 7611 sets forth several rebuttable presumptions through which a person may be presumed to be a natural parent (i.e., "a presumed parent" or "presumed father").[7] "Biological fatherhood does not, in

to be gender neutral, such as referring to a "voluntary declaration of parentage" instead of a "voluntary declaration of paternity." (Stats. 2018, ch. 876, § 29.) We have therefore parenthetically changed some of the terminology in earlier case law to conform it to current usage, although such changes have not been feasible in all instances.

[7] Section 7611 sets forth the following grounds for creating presumed parent status:

"a) The presumed parent and the child's natural mother are, or have been, married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court.
"(b) Before the child's birth, the presumed parent and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true:
"(1) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce.
"(2) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.
"(c) After the child's birth, the presumed parent and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true:

and of itself, qualify a man for presumed father status under section 7611. On the contrary, presumed father status is based on the familial relationship between the man and child, rather than any biological connection. [¶] Section 7611 also recognizes two other grounds for qualification as a presumed father that are outside of the [UPA]. These are an executed voluntary declaration of [parentage] (§ 7570 et seq.) and the so-called conclusive presumption of paternity (. . . § 7540), which dictates the finding that a mother's husband is her child's father, provided the mother and her husband were married and cohabiting when the child was conceived." (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018 (*J.L.*).) In addition, as we have explained, pursuant to *Kelsey S., supra*, 1 Cal.4th 816, "an unmarried biological father may, under narrow circumstances, assert constitutional paternity rights, even though he does not qualify under any of the presumptions listed in section 7611." (*J.L.*, at p. 1018.)

Here, it was undisputed that T.M. is legally recognized as Child's father because T.M. executed a Voluntary Declaration of Parentage at the time of Child's birth.[8] With certain exceptions that are not relevant here, a

---

"(1) With the presumed parent's consent, the presumed parent is named as the child's parent on the child's birth certificate.
"(2) The presumed parent is obligated to support the child under a written voluntary promise or by court order.
"(d) The presumed parent receives the child into their home and openly holds out the child as their natural child.
"(e) The child is in utero after the death of the decedent and the conditions set forth in Section 249.5 of the Probate Code are satisfied." (§ 7611.)

[8] Even without the Voluntary Declaration of Parentage, T.M. would be Child's presumed father based on either section 7611, subdivision (c), under which, "[a]fter the child's birth, the presumed parent and the child's natural

Voluntary Declaration of Parentage "is equivalent to a judgment of parentage of the child and confers on the declarant all rights and duties of a parent." (§ 7573.)  A biological father may bring a motion, within a limited time frame, to attempt to set aside another man's Voluntary Declaration of Parentage. (§ 7577.)  However, M.M. made no attempt to do so here.[9]  Instead, M.M. acknowledges that T.M. is legally recognized as Child's father.

M.M. does not question that Child already has two legally recognized parents (Mother and T.M.), but he seeks to be adjudged a *third* parent to Child.  A request to be adjudged a third parent is governed by section 7612, subdivision (c).  According to that provision, "In an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that recognizing only two parents would be detrimental to the child.  In determining detriment to the child, the court shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time. A finding of detriment to the child does not require a finding of unfitness of any of the parents or persons with a claim to parentage."  (§ 7612, subd. (c).)

_____

mother have married . . . and . . . [w]ith the presumed parent's consent, the presumed parent is named as the child's parent on the child's birth certificate"; or section 7611, subdivision (d), under which "[t]he presumed parent receives the child into their home and openly holds out the child as their natural child."

[9]    M.M. found out that he was Child's biological father after the expiration of the two-year period during which a party may bring an action to set aside a Voluntary Declaration of Parentage.  (§ 7577, subd. (d) ["The action shall be filed not later than two years after the effective date of the declaration."].)

9

This statutory provision "allows a court to recognize three parents only in 'rare cases' where a child truly has more than two parents." (*Donovan*, *supra*, 244 Cal.App.4th at p. 1087.) Specifically, " 'an appropriate action' for application of section 7612, subdivision (c) requires a court to find an *existing*, rather than *potential*, relationship between a putative third parent and the child, such that 'recognizing only two parents would be detrimental to the child.' " (*Id*. at p. 1092, italics added.)

As stated in section 7612, subdivision (c), only a person "with a claim to parentage" is eligible to be a third parent. Thus, not only must a person seeking to become a third parent show that it would be detrimental to the child to have only two parents, the putative third parent must meet the *preliminary* hurdle of establishing that he or she qualifies as a presumed parent. (*In re M.Z.* (2016) 5 Cal.App.5th 53, 66 (*M.Z.*) ["a court considering a request for status as a third parent under section 7612, subdivision (c) should initially determine whether or not a person seeking status as a third parent can establish a claim to parentage under the Uniform Parentage Act. Such an existing parent-child relationship is necessary before determining if recognition of only two parents would be detrimental to the child."].) One way to qualify as a presumed parent is by meeting the requirements under *Kelsey S.*, *supra*, 1 Cal.4th 816. (*J.L.*, *supra*, 159 Cal.App.4th at p. 1023 ["Although section 7611 makes no provision for a *Kelsey S.* father in its list of presumptions, a father asserting valid *Kelsey S.* rights may effectively qualify for presumed father status as the result of his constitutional right to parent, which overrides any contrary statutory direction."]; *J.R. v. D.P.* (2012) 212 Cal.App.4th 374, 389 (*J.R.*) ["for purposes of resolving conflicting presumptions . . . a *Kelsey S.* father is the equivalent of a statutorily presumed father"].) A biological father will qualify as a *Kelsey S.* father only

if he "promptly comes forward and demonstrates a full commitment to his parental responsibilities—emotional, financial, and otherwise," and must have "done all that he could reasonably do *under the circumstances,"* despite having been thwarted by a third party from obtaining presumed parent status. (*Kelsey S.,* at pp. 849-850.) To establish his status as a presumed parent, M.M. relies solely on his contention that he meets the requirements to be a *Kelsey S.* father. M.M. acknowledges that he does not meet any of the statutory definitions of a presumed parent set forth in section 7611.

B.    *Substantial Evidence Supports a Finding That It Would Not Be Detrimental to Child to Have Only Two Parents*

As we have explained, the trial court concluded that (1) M.M. did not qualify as a presumed parent under the principles set forth in *Kelsey S.,* and (2) even assuming for the sake of its analysis that M.M. did qualify as a presumed parent, this was not an appropriate action in which to recognize M.M. as a third parent because it would not be detrimental to Child to have only two parents.[10] We proceed by resolving M.M.'s appeal based on the

---

[10]    As an additional part of its ruling, after assuming for the sake of analysis that M.M. was a *Kelsey S.* father, the trial court also conducted an analysis under section 7612, subdivision (b) to determine whether T.M. or M.M. had the stronger claim to parentage. Under that provision, "If two or more presumptions arise under Section 7611 that conflict with each other, or if one or more presumptions under Section 7611 conflict with a claim by a person identified as a genetic parent pursuant to Section 7555, the presumption that on the facts is founded on the weightier considerations of policy and logic controls." (§ 7612, subd. (b).) The trial court concluded that T.M.'s presumption prevailed over that of M.M.'s. We note, however, that the trial court's analysis under section 7612, subdivision (b) was unnecessary because, due to the Voluntary Declaration of Parentage executed by T.M., which M.M. did not attempt to set aside, T.M. was already, in effect, adjudged to be Child's parent. (§ 7573; *J.R., supra,* 212 Cal.App.4th at p. 387 ["a voluntary declaration of paternity has the force and effect of a judgment,

second ground identified by the trial court.  Specifically, we assume without deciding that M.M. qualifies as a *Kelsey S.* father, and we then examine whether this is an appropriate action in which to recognize M.M. as a third parent.[11]  (Cf. *Donovan*, *supra*, 244 Cal.App.4th at p. 1086 [analyzing whether a biological father should be recognized as a third parent after "assum[ing], without deciding, that there is substantial evidence to support the . . . court's ruling that [the biological father] qualifies as a presumed parent"].)

As we have explained, under section 7612, subdivision (c), "[i]n an appropriate action, a court may find that more than two persons with a claim to parentage under this division are parents if the court finds that

---

unless and until it is set aside"].)  Similarly, although Mother and T.M.'s appellate brief includes a discussion applying section 7612, subdivision (b) to the facts of this case, that discussion is not applicable because M.M. has conceded that T.M. is properly legally recognized as Child's parent and has not sought to set aside the Voluntary Declaration of Parentage.

[11]    Although we need not, and do not, resolve the issue of whether the trial court erred in concluding that M.M. did not qualify as a *Kelsey S.* father, we disapprove of certain of the trial court's reasoning on that issue.  Specifically, the trial court stated, "It would have been incumbent upon [M.M.] to have demanded testing when first informed he might have been the father should he have truly wished to take his position as [Child's] father.  Instead, he was satisfied with the representations made to him at the time.  He chose to waive any rights he might have had at the time by not taking affirmative steps to confirm what he was told."  The uncontradicted facts in the record establish that shortly after discovering the pregnancy, Mother told M.M. that he could not be the father based on a medical determination of the date of conception.  The record contains no support for a finding that M.M. reasonably should have been skeptical of Mother's representation about the medical determination or that M.M. should have doubted a medical doctor's findings about the date of conception.  Therefore, in our view, no substantial evidence supports the trial court's ruling that a M.M. should have "tak[en] affirmative steps to confirm what he was told."

recognizing only two parents would be detrimental to the child." (§ 7612, subd. (c).) We review the trial court's findings under section 7612, subdivision (c) to determine whether they are supported by substantial evidence. (*Donovan*, *supra*, 244 Cal.App.4th at p. 1088.) " 'We defer to the trial court's credibility resolutions and do not reweigh the evidence. [Citation.] If there is substantial evidence to support the ruling, it will not be disturbed on appeal even if the record can also support a different ruling.' " (*M.Z.*, *supra*, 5 Cal.App.5th at p. 64.)

In *Donovan*, *supra*, 244 Cal.App.4th 1075, this court examined the legislative history of section 7612, subdivision (c), and the UPA's approach to parentage, to determine what constitutes " 'an appropriate action' " in which to find a child has more than two parents. (*Id*. at pp. 1088-1092.)

Reviewing the legislative history, *Donovan* concluded that the Legislature intended section 7612, subdivision (c) "to be narrow in scope and to apply only in 'rare cases' in which a child 'truly has more than two parents' who are parents 'in every way.' (Sen. Bill No. 274 (2013-2014 Reg. Sess.) § 1.) In those rare cases, the Legislature sought to protect the child from the 'devastating psychological and emotional impact' that would result from '[s]eparating [the] child from a parent.' (*Ibid*.) Accordingly, 'an appropriate action' for application of section 7612, subdivision (c) is one in which there is an *existing* parent-child relationship between the child and the putative third parent, such that 'recognizing only two parents would be detrimental to the child.' (Sen. Bill No. 274 (2013-2014 Reg. Sess.) § 1.)" (*Donovan*, *supra*, 244 Cal.App.4th at pp. 1090-1091.)

*Donovan* then explained that its interpretation of what constitutes " 'an appropriate action' " under section 7612, subdivision (c) is in harmony with the broader statutory framework for determining parentage under the UPA.

13

(*Donovan*, *supra*, 244 Cal.App.4th at p. 1091.)  As *Donovan* observed, "[i]n making parentage determinations under the UPA, courts seek to protect existing relationships rather than foster potential relationships," and "[o]ver the past three decades, courts increasingly have looked to the nature of the parent-child relationship to resolve paternity disputes."  (*Ibid.*, italics omitted.)

As M.M.'s attempt to be adjudged a third parent depends on a parentage claim arising under *Kelsey S.*, *supra*, 1 Cal.4th 816, one part of *Donovan*'s discussion of the case law arising under the UPA deserves special attention.  In reviewing the case law, *Donovan* stated that "although our Supreme Court has rejected the notion that an unwed biological father has a protected liberty interest in *establishing* a relationship with his child, the court has recognized a biological father's liberty interest 'in *maintaining and preserving an existing* parent-child relationship.' "  (*Donovan*, *supra*, 244 Cal.App.4th at pp. 1091-1092.)  However, as *Donovan* observed, "[a]n exception to this general principle can be found in *Kelsey S., supra*, 1 Cal.4th at pages 848-849, which recognized a liberty interest where a biological father is *precluded* from establishing a relationship with his child." (*Donovan*, at p. 1092, fn. 16.)  *Donovan* expressly declined to consider how the "policy motivations underlying *Kelsey S.*" impacted its analysis of section 7612, subdivision (c), because its assumption that the biological father was a presumed parent did not arise under *Kelsey S.*  (*Ibid.*)  Here, in contrast, we have assumed that M.M. is a presumed parent based on *Kelsey S.*

Although *Donovan* did not consider the significance of *Kelsey S.* in deciding how to interpret section 7612, subdivision (c), we find no basis to conclude that *Donovan*'s interpretation of section 7612, subdivision (c) is inapplicable when a presumed parent seeking to be adjudged a third parent

14

is a *Kelsey S.* father. The constitutional rights to due process and equal protection accorded to a *Kelsey S.* father are honored by allowing a *Kelsey S.* father to participate, just like any other presumed parent, in a proceeding to be adjudged a third parent. However, as section 7612, subdivision (c) provides, the ultimate focus in such a proceeding must be on whether it would be detrimental to the child to have only two parents, not on whether it is in the putative parent's interest to obtain third parent status. That inquiry is the same regardless of whether the person seeking to be adjudged a third parent is a *Kelsey S.* father or is a presumed parent based on one of the statutory grounds in section 7611.

Therefore, in assessing M.M.'s petition to be adjudged a third parent, we apply the approach set forth in *Donovan*, under which we determine whether there is an "existing, rather than potential, relationship between a putative third parent and the child, such that 'recognizing only two parents would be detrimental to the child.' " (*Donovan*, *supra*, 244 Cal.App.4th at p. 1092; see also *M.Z.*, *supra*, 5 Cal.App.5th at pp. 66-68 [the court properly found that § 7612, subd. (c), did not apply because the putative third parent did not have existing parent-child relationship with the children]; *L.L.*, *supra*, 13 Cal.App.5th at p. 1317 ["Absent an *existing* relationship with [the child], there is no ground on which [the biological father] could be recognized as a third parent under section 7612, subdivision (c)."].) This inquiry is necessary because "[a] person who lacks an existing parent-child relationship is not a child's 'parent in every way.' . . . Nor would separation from such a person cause 'devastating psychological and emotional impact on the child.' " (*Donavan,* at pp. 1092-1093.) As subsequent case law emphasizes, the question is not whether it would be detrimental to the child if a third parent

15

*was added*, but rather whether it would be detrimental to the child *to have only two parents.* (*L.L.*, at p. 1316.)

Here, the trial court found that "[Mother] and [T.M.] have been the only parents [Child] has known since birth," and that although "[M.M.] has seen [Child] on several occasions for brief periods of time[,] . . . there have been no real visits nor was there evidence of any type of bonding between [M.M.] and [Child]." Expressly relying on *Donovan, supra,* 244 Cal.App.4th 1075, the trial court concluded that "it is not detrimental to [Child] to have only two parents." The trial court explained that M.M.'s case was like *Donovan* in which "the parent in [M.M.'s] position did not have an existing relationship and thus there was no substantial evidence to support a detriment finding pursuant to . . . section 7612[, subdivision] (c)."

The trial court's finding that M.M. did not have a relationship with Child is supported by substantial evidence. According to the settled statement, M.M. testified that "Mother's misrepresentation about [M.M.] not being the child's biological father had *resulted in him not having a relationship with [Child].*" (Italics added.) Further M.M. testified that "he wanted *to begin his relationship with [Child]* now and not wait even longer," implying that he believed he had not yet established a relationship with Child. (Italics added.)

Despite the substantial evidence supporting a finding that he does not have a relationship with Child, M.M. argues that the trial court should have adjudged him to be a third parent because, based on certain statements appearing in the trial exhibits, it could be inferred that Mother and T.M. may not have a stable marriage, or that one or both of them may suffer from mental health issues. Based on those inferences, M.M. argues that it would be detrimental for Child to have only two parents because a third parent

16

could lend additional stability.  We reject the argument.  The inferences that M.M. advances are unduly speculative, as is the possibility that any marital instability or mental health issues would impact Child to such an extent that it would be detrimental to have only two parents.  Moreover, the trial court reasonably could determine that even if the potential future problems identified by M.M. might arise, it would still not be detrimental to Child to have only two parents, given M.M.'s lack of an existing relationship with Child.

M.M. also argues that "[C]hild will not be detrimentally impacted by recognizing three parents because he will not be removed from his current placement," in that he will continue to reside with Mother and T.M.  We reject M.M.'s argument because it misapprehends the appropriate inquiry.  As we have explained, the issue is whether it would be detrimental to Child to have only two parents, not whether it would be detrimental to the child if a third parent was added.  (*L.L., supra,* 13 Cal.App.5th at p. 1316.)

Finally, M.M. contends that the trial court should have adjudged him to be a third parent because Child is "being denied [the] possibility of continuing to develop a bond with his biological father and his biological grandparents."  M.M. argues that it is detrimental to Child to deny M.M. status as a third parent because "[Child] one day, probably before he turns 18 years old, will find out that when his biological father tried to continue developing his [relationship] with him after they spent time together in San Diego, his own M[other] and [T.M] denied him the right to have a relationship with his biological father without articulating any good reason other than citing the problem that [Mother] created by misleading [M.M.] and [T.M.]"  This argument fails because it is precisely the type of detriment to a child that *Donovan* explained is insufficient, without more, to support a

17

judgment recognizing a biological father as a third parent when the biological father does not have an existing relationship with his child. The trial court in *Donovan* conferred third parent status on a biological father who did not have a relationship with his child, reasoning that because of the genetic connection, it would be detrimental to the child to be denied a chance to continue to develop a relationship with the biological father and his extended family, and that the child would be negatively impacted when he ultimately discovered his true heritage. (*Donovan, supra,* 244 Cal.App.4th at p. 1082.)[12] *Donovan* rejected that approach, explaining, among other things, that "[t]he court's speculation as to potential harm from [the child] discovering his biological father later in life is not substantial evidence supporting a finding of detriment within the meaning of section 7612, subdivision (c)." (*Id.* at p. 1093.) As *Donovan* explained, such an approach "would open the floodgates to virtually all biological fathers who may qualify as a presumed parent under section 7611 and seek to form a relationship with the child. Such an interpretation would apply far beyond the 'rare case' envisioned by the Legislature." (*Ibid.*)

---

[12] Specifically, the trial court in *Donovan* stated, "Now, I want to be clear. [The statute] says 'in determining detriment to the child, the court shall consider all rel[evant] factors.' And that's what I'm considering. In particular, I am considering the fact that this child has a cultural heritage; that this child has DNA running through his veins; that this child has another family that was introduced to him at a younger [stage of his] life who seemed to want to be involved with him; that this child will, in fact, have to do those family trees; that this child will, if he finds out at age 21 that he had a different bio father that was hidden from him, will have an effect on him. It will affect him—because I've been doing this a long time and I've seen those type of effects. It's just one of those things. It's not fair to lie to these kids about this type of situation, it just isn't." (*Donovan, supra,* 244 Cal.App.4th at p. 1082.)

18

In sum, we conclude that substantial evidence supports a finding that, due to M.M.'s lack of a relationship with Child, it would not be detrimental for Child to have only two parents. This was, therefore, not an appropriate action in which to recognize three parents pursuant to section 7612, subdivision (c).

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

DO, J.

19